**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) MOTION TO DISMISS PLAINTIFF'S PATENT INFRINGEMENT CLAIMS FOR LACK OF STANDING (DKT. 91)

**I.   INTRODUCTION**

On October 23, 2017, Plaintiff Separation Design Group IP Holdings ("SDGIP" or "Plaintiff") brought this patent infringement action against Defendant Inogen, Inc. ("Defendant"). Dkt. 1. The Complaint alleges the infringement of United States Patent Nos. 8,894,751 ("the '751 Patent") and 9,199,055 ("the '055 Patent"). *Id.* On March 20, 2017, Defendant filed a motion to dismiss ("Motion") the patent infringement claims based on a claim that Plaintiff lacked standing to pursue them. Dkt. 91. A hearing on the Motion was conducted on April 24, 2017, and the matter was taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

**II.  BACKGROUND**

Both parties distribute oxygen concentrators. These devices make concentrated oxygen from the air using a molecular sieve to separate out atmospheric nitrogen. Dkt. 1 at ¶¶ 10-12, 20. Plaintiff's parent company, SDG, LLC ("SDG"), filed a PCT Application on October 5, 2010. It then filed two U.S. national phase provisional patent applications, U.S. Patent Application Nos. 61/248,712 ('712 Application) and 61/264,069 ('069 Application), which claim the priority date of the PCT Application. Within a year, SDG filed two non-provisional applications, U.S. Patent Application Nos. 13/499,943 ('943 Application) and 14/519,868 ('868 Application), which respectively issued as the '751 Patent and the '055 Patent ("Asserted Patents").

Prior to the filing of this action, SDG obtained an assignment of rights from the named inventors of the Asserted Patents and then assigned the rights to Plaintiff, which as noted is its wholly owned subsidiary. Dkt. 92 at 3. Defendant's argument that Plaintiff lacks standing to bring the present claims is based on the claim that assignment of non-provisional applications and the Asserted Patents was defective. Dkt. 92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
|---|---|---|---|
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

### III. ANALYSIS

#### A. Legal Standards

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990)).

Whether a party has standing to sue is a question of law. *Prima Tek II L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000). "[A] suit for infringement must ordinarily be brought by a party holding legal title to the patent." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). "Standing to sue for patent infringement derives from the Patent Act, which provides that '[a] patentee shall have remedy by civil action for infringement of his patent.'" *Prima Tek II,* 222 F.3d at 1376-77 (quoting 35 U.S.C. § 281). The Patent Act defines "patentee" as including "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).

"A plaintiff generally has the burden of proving standing to sue." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In the context of a patent infringement action, "the plaintiff must demonstrate that it held enforceable legal title at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1309 (Fed. Cir. 2003) (emphasis omitted). "[P]arties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue." *Enzo*, 134 F.3d at 1093.

Under 35 U.S.C. § 261, "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C. § 261. "Accordingly, an assignee is the patentee and has standing to bring suit for infringement in its own name." *Enzo*, 134 F.3d at 1093 (citing 35 U.S.C. § 100(d)). The writing assignment also applies to "virtual assignees" —those to whom "all substantial rights under the patent have been transferred in the form of an exclusive license." *Id*.

"The question of whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, is resolved by Federal Circuit law." *Bd. of Tr. of Leland Stanford Junior Univ. v. Roche Molecular Sys. Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011). Therefore, "whether a patent assignment clause creates an automatic assignment or merely an obligation to assign is . . . a matter of federal law." *Id*. It has been established that "the contract language 'agree to assign' reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests." *Id*. On the other hand, the language "hereby assign" reflects a present assignment of interests. *Id*. at 842.

#### B. Application

##### 1. Plaintiff's Ownership of Asserted Patents

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
|---|---|---|---|
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

The following matters are undisputed: (1) on February 12, 2010, the six named inventors on the '751 patent executed a document ("the 2010 Assignment") that provides for their assignment of the "entire right, title, and interest to all inventions and improvements disclosed and described in [the '712 Application and the '069 Application] to Plaintiff's parent company SDG, LLC; (2) the inventors executed no further assignments; and (3) shortly before the commencement of this action, SDG signed a document that was an assignment to Plaintiff SDGIP ("the 2015 Assignment"). Dkt. 111 at 1-2.

The relevant provisions of the 2010 Assignment are as follows:

> 1) ***Agree to sell, assign***, transfer, and convey, and ***hereby do sell, assign***, transfer, and convey, to Separation Design Group, LLC, a corporation of the State of Pennsylvania having a principal business at 931 Rolling Meadows Road, Waynesburg, Pennsylvania, 15370 (hereinafter referred to as "ASSIGNEE"), ***the entire right, title, and interest in and to all inventions and improvements disclosed and described in said provisional application***;
>
> 2) ***Agree to sell, assign***, and transfer to ASSIGNEE, our full, exclusive, and entire right, title and interest in and to any United States ***non-provisional applications based on or claiming the benefit of said provisional applications***, in whole or in part, and in and to any divisions, continuations, and reissues thereof, and our full, exclusive, and entire right, title, and interest in and to any foreign application or application corresponding to said provisional applications, in whole or in part, in countries other than the United States, in and to any Letters Patents and similar protective rights granted on said United States and foreign applications, and in and to the right to claim any applicable priority rights arising from or required for said foreign applications under the terms of any applicable conventions, treaties, statutes, or regulations, said foreign applications to be filed and issued in the name of ASSIGNEE, or its designee insofar as permitted by applicable law.

Ex. D, Dkt. 93-4 at 70-71 (emphasis added).

The primary dispute concerns the first and second clauses. The parties disagree as to their meaning and effect. Defendant contends that, because the second clause only includes the language "agree to assign," it did not effect an actual assignment of rights to the non-provisional applications. Dkt. 92 at 6. Plaintiff responds by focusing on the first clause. It includes the language "hereby do assign," as well as the "entire right, title, and interest in and to all inventions and improvements disclosed and described in said provisional application." Dkt. 111 at 2-3. Plaintiff argues that the complete assignment of the provisional applications is effective against the later applications because the later applications do not include any new matter. *Id.* at 6-9.

Contractual interpretation begins with the language of the disputed agreement. The first clause is directed to the inventions disclosed in the '712 and '069 provisional applications. The second clause

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

appears to address all subsequent applications claiming priority to the provisional applications. Different words are used to describe the conveyance of rights. The first clause states "agree to assign" and "hereby do assign," but the second clause states only "agree to assign." This is consistent with the timing of the agreement. It was entered in February 2010. This was before the non-provisional applications had been drafted and filed.

As noted, *Stanford* concluded that "the contract language 'agree to assign' reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests." 583 F. 3d at 842. On the other hand, the language "hereby assign" reflects a present assignment of interests. *Id.* at 842. Applying these principles to the contract here shows that the first clause immediately assigns the available rights, but the second clause only promises to assign the rights in the future.

Having determined that only the rights under the first clause were assigned, the next question concerns the scope of the transfer. Thus, what was assigned through the contract? Plaintiff argues that the plain language of the first clause includes the entirety of the inventions and improvements disclosed in the '712 Application and the '069 Application. Plaintiff also contends that what was agreed to be assigned later in the second clause are rights that are distinct from those within the assignment effected by the first clause. Dkt. 111 at 3. In response, Defendant argues that the two clauses must be read together in interpreting the contract. Based on this approach, it argues that the second clause covers all non-provisional applications claiming priority to the provisional applications. Dkt. 127 at 3-7.

In the 2010 Assignment, the first clause expressly assigned "the entire right, title, and interest in and to all inventions and improvements disclosed and described in said provisional application." Ex. D, Dkt. 93-4 at 70. This language is best construed to mean that the rights conferred went beyond the provisional application itself, and included the entire invention disclosed in the application. The second clause conferred the future right to "any United States non-provisional applications based on or claiming the benefit of said provisional applications, in whole or in part, and in and to any divisions, continuations, and reissues thereof" as well as rights to foreign applications. *Id.* at 70-71. The temporal difference supports the interpretation that clause one concerned a transfer at the time of signing and clause two to one that would occur later. Thus, when viewed collectively, the most reasonable interpretation of the two clauses is that the second clause is not an express reservation of rights limiting what would otherwise be assigned by the first clause. Instead, it applies to subject matter beyond that disclosed and described in the '712 and '069 Applications and that could potentially be disclosed in subsequent continuation-in-part applications that contain "new matter."

This interpretation is consistent with the understanding of the inventors, who were deposed (Dkt. 111 at 10), and of Wendy Choi, who represented SDG in the prosecution and drafted the assignment. Dkt. 111, Ex. E, Choi Tr. at 245:2-247:6; Ex. F, Choi Decl. at ¶¶ 5-8. It is also consistent with section 306.01 of the Manual of Patent Examining Procedure ("MPEP"), which details the effect of assignments of provisional applications.[1] Dkt. 111-1, Ex. C at MPEP § 306.01. Specifically, the MPEP recognizes that assignments

---

[1] Although the MPEP is not binding, it "may be given judicial notice to the extent they do not conflict with the statute." *In re Fisher*, 421 F.3d 1365, 1372 (Fed. Cir. 2005) (citing *Enzo Biochem v. Gen-Probe*, 323 F.3d 956, 964 (Fed. Cir. 2002)). Here, although the recording of an assignment with the PTO is not a determination as to its validity, the recording "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech. Inc. v. ITC*, 601 F.3d 1319, 1328 (Fed. Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

of provisional applications convey rights in the subject matter disclosed in the application, and apply to later filed applications with the same subject matter. *See* MPEP §306.01 ("an assignment recorded against the provisional application will be effective in the later application, but "if the later application includes "subject matter that is not common with subject matter of the provisional application, new assignment papers must be recorded.").

Based on this analysis, it is logical that an assignment of all inventions disclosed in a provisional application is sufficient to transfer the entire chain of applications and patents that follow. The only limitation, which does not apply here, is that the patents not present any new matter. Here, Defendant does not dispute that the '751 and the '055 Patents disclose no new matter. Thus, they do not go beyond what was disclosed and described in the previously assigned '712 and '069 Applications. Accordingly, the assignment of the rights associated with the provisional applications transferred the ownership of the later-filed non-provisional applications.

For these reasons, ownership of the subject matter contained in the Asserted Patents was transferred from the inventors to SDG by the 2010 Assignment, and later transferred from SDG to SDGIP by the 2015 Assignment. SDGIP has complete title to the Asserted Patents. Therefore, it has standing to assert the patent infringement claims alleged in this action.

    2.    <u>Employment Agreement</u>

The inventors each signed an employment agreement or consulting agreement with SDG in which each assigned all intellectual property rights. Dkts. 111-2 at 166-69; 111-3 at 1-32. The same relevant language is used in all of these agreements:

> 6.    <u>Ownership of Intellectual Property</u>. To the extent that the Employee, alone or with others, develops, makes, conceives, contributes to or reduces to practice ***any intellectual property*** related to the duties of Employee hereunder or which results in any way from Employee using the resources of the Company, ***during the period of Employee's employment with the Company***, whether or not during working hours, such intellectual property is and shall be the ***sole and exclusive property of the Company***.
>
>     To the extent any such intellectual property can be protected by patent, and is deemed in any way to fall within the definition of "work made for hire" as such term is defined in 17 U.S.C. § 101, such intellectual property shall be considered to have been produced under contract for the Company as a work made for hire. In any event, and regardless of whether such intellectual property is deemed to be a "work made for hire", Employee shall disclose any and all such intellectual property to the Company and does ***hereby assign the Company any and all right, title and interest which the Employee may have in and to such intellectual property***. Upon the Company's request at any time, including any time after termination of Employee's employment, Employee shall execute and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08323 JAK (JPRx) | Date | June 1, 2017 |
|---|---|---|---|
| Title | Separation Design Group LLP Holdings, LLC v. Inogen, Inc. | | |

> deliver to the Company such other documents as the Company deems necessary to vest in the Company the sole ownership of and exclusive worldwide rights in and to, all of such intellectual property.

(Dkt. 111-2 at 3).

This language includes that the inventors "hereby assign" rights to the intellectual property produced during their employment. The Federal Circuit has held that an employment agreement including contractual language such as "[employee] hereby conveys, transfers, and assigns to [employer] . . . all right, title and interest in and to Inventions" is both an agreement to assign and an express assignment of rights in future inventions. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008). "[I]f the patents in suit were within the scope of the employment agreement, they would have been automatically assigned to [employer] by operation of law with no further act required on the part of the company." *Id.*

Here, the relevant language provides that any intellectual property developed during the scope of employment is the "sole and exclusive property of" SDG and that each inventor hereby assigns the rights to the intellectual property to SDG. The parties do not dispute that the named inventors developed the patented inventions while engaged by SDG. Therefore, the corresponding agreement adds further support for the contractual interpretation discussed above.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of standing is **DENIED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |